IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JUSTIN WAYNE PRUETT,                                6:13-cv-02157-BR

           Plaintiff,                         OPINION AND ORDER

v.

TIM MUELLER (Linn Co. Sheriff);
CAPTAIN BAGGETT (Linn Co. Captain);
SGT. SCHRADER (Linn Co. 1st Sgt.);
SGT. LANGLEY (Linn Co. 1st Sgt.);
SGT. TAYLOR (Linn Co. Sgt.); DOCTOR
MORGAN (Linn Co. Doctor); DON NELSON
(Linn Co. Mental Health); BEN NEWMAN
(Linn Co. Psychiatric Nurse
Practitioner); and MARILYN
STUTZMAN, R.N.,

           Defendants.


JUSTIN WAYNE PRUETT
1083 Centennial Boulevard
Springfield, OR 97477

           Plaintiff, *Pro Se*


1 - OPINION AND ORDER

**GERALD L. WARREN**
Law Office of Gerald Warren
901 Capitol Street NE
Salem, OR 97301
(503) 480-7252

      Attorney for Defendants


**BROWN, Judge.**

    This matter comes before the Court on Defendants' Motion
(#33) for Summary Judgment.  For the reasons that follow, the
Court **GRANTS** Defendants' Motion and **DISMISSES** this case **with
prejudice** in its entirety.


### FACTUAL BACKGROUND

    The material facts are undisputed and taken from the
parties' submissions on summary judgment.

    Plaintiff Justin Wayne Pruett was confined in the Linn
County Jail as a pretrial detainee on August 20, 2013.  Plaintiff
remained in the Linn County Jail until October 11, 2013, when he
was transferred to the Oregon State Hospital (OSH) for a mental-
competency evaluation.  Plaintiff returned to Linn County Jail on
November 8, 2013, where he stayed until he was transferred to the
Oregon Department of Corrections on December 5, 2013.

    On August 20, 2013, Lynn Morgan, M.D., prescribed Gabapentin
and Naproxen for Plaintiff's wrist and back pain and a wrist
brace.  Dr. Morgan saw Plaintiff again on August 27, 2013, at

2 - OPINION AND ORDER

which time Plaintiff requested Dr. Morgan clear Plaintiff to
work.  Dr. Morgan refused because he was concerned work might
exacerbate Plaintiff's injuries.

On August 22, 2013, Plaintiff was evaluated by Donald
Nelson, Ph.D.  Plaintiff and Dr. Nelson discussed depression,
anxiety, and attention-deficit hyperactivity disorder (ADHD).
Dr. Nelson scheduled Plaintiff to meet with J. Ben Newman, a
psychiatric mental-health nurse practitioner (PMHNP).  Plaintiff
saw PMHNP Newman on August 22, September 3, September 10, and
November 12, 2013.

On August 24, 2013, Plaintiff submitted an Inmate Request
Form (also known as a "kite")[1] to the mental-health unit
requesting an appointment.  After filling out an additional form,
Plaintiff met with Dr. Nelson on August 28, 2013.  At this
appointment Plaintiff primarily discussed his physical
impairments with Dr. Nelson and requested placement on a list of
inmates eligible to work.

On August 27, 2013, Plaintiff submitted a kite to his
supervisor in which he requested a second mattress to help with
his back pain and to be eligible to perform work in the Jail.
Jail personnel denied Plaintiff's request on August 28, 2013,
because both the decision to provide a second mattress and to

---

[1] The parties and declarants separately refer to this form
as either a "kyte" or "kite."

make Plaintiff eligible for work were medical decisions.  On
August 28, 2013, Plaintiff requested a grievance form from his
supervisor.  His supervisor responded that Plaintiff must submit
a kite to the medical staff before he could be provided with a
grievance form because Plaintiff's requests concerned medical
determinations.  Linn County Jail grievance procedures require an
inmate to submit a kite to the appropriate staff member before
filing a grievance.

On August 29, 2013, Plaintiff submitted a kite to the
medical staff requesting an urgent appointment to address muscle
spasms and pain in his back.  The medical staff forwarded the
request to the jail doctor.

On August 30, 2013, Plaintiff submitted a kite requesting to
see Dr. Nelson, whom he had seen two days earlier.  Mental-health
staff responded that Dr. Nelson had requested to see Plaintiff
monthly and that his next appointment was already scheduled.

Also on August 30, 2013, Plaintiff submitted a kite to the
medical staff regarding, among other issues, a second mattress.
Marilyn Stutzman, R.N., responded on September 2, 2013, that
Plaintiff had been examined by a doctor and did not meet the
criteria for a second mattress.

On September 2, 2013, Plaintiff submitted three separate
kites.  In his first kite Plaintiff requested an in-person
meeting with his supervisor to discuss his requests for a second

mattress, elbow brace, and "donut" to sit on.  Plaintiff's
supervisor declined to meet with Plaintiff face-to-face and
instructed Plaintiff to file a grievance concerning his requests.
Plaintiff then submitted a kite to the medical unit in which he
requested a brace for his left elbow and an appointment with a
doctor about his back pain.  The medical unit responded Plaintiff
would be allowed to wear an elbow brace if somebody brought one
for him.  Plaintiff submitted a third kite to the mental-health
unit requesting to see Dr. Nelson for counseling on personal
matters.  On September 3, 2013, the mental-health unit responded
Plaintiff was only scheduled to see Dr. Nelson once per month,
but he was scheduled to see the mental-health nurse practitioner
that day.

Also on September 2, 2013, Plaintiff had an appointment with
R.N. Stutzman and reported having a ruptured disc in his back.
He again requested a second mattress and inquired about being
evaluated to be eligible to work.  R.N. Stutzman denied
Plaintiff's request for a second mattress.

On September 3, 2013, Plaintiff had an appointment with
PMHNP Newman.

On September 4, 2013, Plaintiff submitted a kite to his
supervisor requesting a form with which to file a grievance
concerning his mental-health care.  In addition, Plaintiff
complained he was not receiving proper mental-health medication

and that he wanted to be placed on Adderall or Ritalin to treat his ADHD.  R.N. Stutzman responded she would speak to PMHNP Newman about Plaintiff's mental-health care.  R.N. Stutzman met with Plaintiff on September 4, 2013, at which time she instructed Plaintiff to stop submitting multiple kites unless he had a new or emergent problem.

On September 5, 2013, Plaintiff filed a grievance with five requests:  (1) to receive a second mattress, (2) to receive different pain medication and additional medication for post-traumatic stress disorder and ADHD, (3) to receive an elbow brace, (4) to undergo an x-ray or bone scan on his lower back, and (5) to see a dentist.

Also on September 5, 2013, Plaintiff sent a kite to the medical unit repeating the same requests that Plaintiff raised in his grievance and requesting to see PMHNP Newman.  R.N. Stutzman responded by informing Plaintiff that the issued he raised had already been addressed.

On September 7, 2013, R.N. Stutzman denied Plaintiff's grievance because Plaintiff's medical and mental-health needs as determined by his medical practitioners were being met.  That day Plaintiff appealed the denial of his grievance and made the following requests:  (1) to stop the medical unit from "slandering" him, (2) to see a dentist, (3) to receive a second mattress; (4) to undergo a bone scan on his right wrist and an

x-ray on his lower back; (5) to receive a prescription for
Adderall or Ritalin for ADHD; and (6) to receive an elbow brace.

Also on September 10, 2013, Capt. Baggett responded to
Plaintiff's appeal and agreed with R.N. Stutzman that Plaintiff's
medical and mental-health needs were being met.  Capt. Baggett
also warned Plaintiff:

> I understand that you continue to use the kite system
> to demand the same items that are being dealt with
> through the grievance system.  If you continue to abuse
> the kite system you may be restricted in their use.
>
> In other words you must wait for the grievance system
> for your answer.
>
> Of course if you should have a medical emergency please
> contact staff and it will be addressed.

Pl.'s Resp., Ex. 17.

That same day Plaintiff sent a kite to his supervisor
seeking to file another grievance on the ground that Plaintiff's
treatment for ADHD was insufficient because of PMHNP Newman's
failure to prescribe Ritalin.  Plaintiff stated PMHNP Newman
declined to prescribe Ritalin because other inmates had misused
the medication.  Sgt. Schrader responded to the kite by informing
Plaintiff that the kite did not set out an issue on which
Plaintiff could file a grievance because PMHNP Newman was not an
employee of the Sheriff's Office.  Sgt. Schrader noted,
however, that Plaintiff had an appeal pending on a similar
topic and inquired whether Plaintiff would like to appeal
further.

7 - OPINION AND ORDER

On September 11, 2013, Plaintiff sent a kite to
Capt. Baggett asking him to personally come to Plaintiff's cell
to observe his injuries and again raising the issue of
PMHNP Newman's failure to prescribe Ritalin and Adderall.
Capt. Baggett responded:  "I could not have made it more clear in
my response to the grievance appeal.  As promised your kite [*sic*]
restriction is attached."  Pl.'s Resp. Ex. 18.  Capt. Baggett
attached a Misconduct Report in which he found Plaintiff had
committed a "minor violation" by engaging in behavior that
disrupted routine facility operations and restricted Plaintiff to
two kites per week until September 27, 2013.  Baggett Decl.,
Ex. 1.

Also on September 11, 2013, Plaintiff appealed the denial of
his grievance to the Linn County Sheriff.  On October 3, 2013,
Sheriff Mueller concurred with the medical and corrections staff
and denied Plaintiff's grievance.

**PROCEDURAL BACKGROUND**

On December 9, 2013, Plaintiff filed a Complaint (#2)
against Defendants in which he asserted two claims pursuant to
28 U.S.C. § 1983 against Defendants alleging they violated
Plaintiff's right to be free from cruel and unusual punishment by
(1) denying Plaintiff medical care for a broken wrist and (2)
denying Plaintiff medication to treat his ADHD.  By Order (#8)

issued January 10, 2014, the Court dismissed Plaintiff's claims for failure to state a claim with leave to amend.

On February 3, 2014, Plaintiff filed an Amended Complaint (#12) in which he again brings two claims pursuant to 28 U.S.C. § 1983.  In Claim One Plaintiff asserts Defendants were deliberately indifferent to Plaintiff's serious mental-health conditions during his confinement in the Linn County Jail from August 20, 2013, to December 5, 2013, in violation of the Eighth and Fourteenth Amendments of the United States Constitution.  In Claim Two Plaintiff alleges Defendants were deliberately indifferent to his serious back and right-wrist injuries during his confinement in the Linn County Jail from August 20, 2013, to December 5, 2013, in violation of the Eighth and Fourteenth Amendments.

On May 19, 2014, Defendants moved for summary judgment on both of Plaintiff's claims asserting Defendants were not deliberately indifferent to Plaintiff's medical conditions and, alternatively, that Defendants were entitled to qualified immunity.

**STANDARDS**

Summary judgment is appropriate when there is not a "genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Washington Mut. Ins. v. United*

*States*, 636 F.3d 1207, 1216 (9th Cir. 2011).  *See also* Fed. R. Civ. P. 56(a).  The moving party must show the absence of a dispute as to a material fact.  *Rivera v. Philip Morris, Inc.*, 395 F.3d 1142, 1146 (9th Cir. 2005).  In response to a properly supported motion for summary judgment, the nonmoving party must go beyond the pleadings and show there is a genuine dispute as to a material fact for trial.  *Id*.  "This burden is not a light one . . . .  The non-moving party must do more than show there is some 'metaphysical doubt' as to the material facts at issue."  *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citation omitted).

A dispute as to a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002)(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  The court must draw all reasonable inferences in favor of the nonmoving party.  *Sluimer v. Verity, Inc.*, 606 F.3d 584, 587 (9th Cir. 2010).  "Summary judgment cannot be granted where contrary inferences may be drawn from the evidence as to material issues."  *Easter v. Am. W. Fin.*, 381 F.3d 948, 957 (9th Cir. 2004)(citing *Sherman Oaks Med. Arts Ctr., Ltd. v. Carpenters Local Union No. 1936,* 680 F.2d 594, 598 (9th Cir. 1982)).

A "mere disagreement or bald assertion" that a genuine

dispute as to a material fact exists "will not preclude the grant of summary judgment." *Deering v. Lassen Cmty. Coll. Dist.,* No. 2:07-CV-1521-JAM-DAD, 2011 WL 202797, at *2 (E.D. Cal., Jan. 20, 2011)(citing *Harper v. Wallingford*, 877 F.2d 728, 731 (9th Cir. 1989)). *See also Moore v. Potter*, 701 F. Supp. 2d 1171 (D. Or. 2010). When the nonmoving party's claims are factually implausible, that party must "come forward with more persuasive evidence than otherwise would be necessary." *LVRC Holdings LLC v. Brekka*, 581 F.3d 1127, 1137 (9th Cir. 2009)(citing *Blue Ridge Ins. Co. v. Stanewich*, 142 F.3d 1145, 1149 (9th Cir. 1998)).

The substantive law governing a claim or a defense determines whether a fact is material. *Miller v. Glenn Miller Prod., Inc.*, 454 F.3d 975, 987 (9th Cir. 2006). If the resolution of a factual dispute would not affect the outcome of the claim, the court may grant summary judgment. *Id*.

A *pro se* plaintiff's complaint "must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Thus, the court must construe *pro se* filings liberally. "A district court should not dismiss a pro se complaint without leave to amend unless it is 'absolutely clear that the deficiencies in the complaint could not be cured by amendment.'" *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012).

## **DISCUSSION**

As noted, Plaintiff raised two claims under 42 U.S.C.

§ 1983.

Section 1983 provides in relevant part:

> Every person who, under color of any statute,
> ordinance, regulation, custom, or usage, of any State
> or Territory or the District of Columbia, subjects, or
> causes to be subjected, any citizen of the United
> States or other person within the jurisdiction thereof
> to the deprivation of any rights, privileges, or
> immunities secured by the Constitution and laws, shall
> be liable to the party injured in an action at law,
> suit in equity, or other proper proceeding for redress.

To establish a claim under § 1983 against an individual

defendant, a plaintiff must plead facts sufficient to show

personal participation in the alleged constitutional deprivation

by each defendant.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 676

(2009)("Because vicarious liability is inapplicable to . . .

§ 1983 suits, a plaintiff must plead that each Government-

official defendant, through the official's own individual acts,

has violated the constitution.").  *See also Zellmer v.

Constantine*, 520 F. App'x 564, 565 (9th Cir. 2013)("The district

court properly dismissed defendant Constantine because Zellmer

failed to show that Constantine had any personal involvement in

the alleged violations."); *Arizmendi v. City of San Jose*, No.

5:08-CV-05163 EJD, 2012 WL 5471152, at *4 (N.D. Cal. Nov. 9,

2012)("A plaintiff must establish 'integral participation' of the

individual officer in the alleged constitutional violation.

Summary judgment, therefore, is proper when there is no question of fact or dispute that specific individual defendants did not participate personally in an allegedly unconstitutional search.")(citation omitted).

"In order to survive a motion for summary judgment on a § 1983 claim, the plaintiff must establish a genuine issue of material fact that the defendant (1) acted under the color of state law, and (2) deprived him of a constitutional right." *Ewing v. City of Stockton*, 588 F.3d 1218, 1223 (9th Cir. 2009)(citing *Levine v. City of Alameda*, 525 F.3d 903, 905 (9th Cir. 2008)).  State officials or municipalities are liable for deprivations of life, liberty, or property that rise to the level of a "constitutional tort" under the Due Process Clause of the Fourteenth Amendment.  *Johnson v. City of Seattle*, 474 F.3d 634, 638 (9th Cir. 2007).

### A.    Plaintiff's Deliberate-Indifference Claims

As noted, in his First Amended Complaint Plaintiff asserts two claims against Defendants for deliberate indifference to Plaintiff's serious medical needs in violation of the Eighth and Fourteenth Amendments to the United States Constitution.

### 1.    Standards

Deliberate indifference to serious medical needs is a cognizable claim for violation of the Eighth Amendment proscription against cruel and unusual punishment.  *Estelle v.*

*Gamble*, 429 U.S. 97, 104 (1976). *See also Colwell v. Bannister*, 763 F.3d 1060, 1066 (9th Cir. 2014)(same). "Claims by pretrial detainees[, however,] are analyzed under the Fourteenth Amendment Due Process Clause, rather than the Eighth Amendment." *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998). *See also Young v. Wolfe*, 478 F. App'x 354, 356 (9th Cir. 2012). "[P]retrial detainees' rights under the Fourteenth Amendment are comparable to prisoners' rights under the Eighth Amendment," and, therefore, the substantive standards are the same. *Frost*, 152 F.3d at 1128.

> To sustain [a] deliberate indifference claim, [a plaintiff must] meet the following test:  "First, the plaintiff must show a serious medical need by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain.  Second, the plaintiff must show the defendant's response to the need was deliberately indifferent."

*Peralta v. Dillard*, 704 F.3d 1124, 1127 (9th Cir. 2013)(quoting *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006)).  To satisfy the second prong (*i.e.*, that defendant's response to the plaintiff's needs was deliberately indifferent), a plaintiff must show there was "'(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm [was] caused by the indifference.'"  *Peralta*, 704 F.3d at 1127 (quoting *Jett*, 439 F.3d at 1096).  Deliberate indifference may be established by showing that prison officials have denied, delayed, or intentionally interfered with medical treatment or it

may be demonstrated by the way prison officials have provided
medical care. *Jett*, 439 F.3d at 1096.

"Mere negligence in diagnosing or treating a medical
condition, without more, does not violate a prisoner's Eighth
Amendment rights." *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th
Cir. 2004)(citation omitted). *See also Wilhelm v. Rotman*, 680
F.3d 1113, 1122 (9th Cir. 2012)("Medical malpractice does not
become a constitutional violation merely because the victim is a
prisoner."). In addition, "a plaintiff's showing of nothing more
than a difference of medical opinion as to the need to pursue one
course of treatment over another [is] insufficient, as a matter
of law, to establish deliberate indifference." *Wilhelm*, 680 F.3d
at 1122 (quotation omitted). "Rather, to prevail on a claim
involving choices between alternative courses of treatment, a
prisoner must show that the chosen course of treatment 'was
medically unacceptable under the circumstances,' and was chosen
'in conscious disregard of an excessive risk to [the prisoner's]
health.'" *Toguchi*, 391 F.3d at 1058 (quoting *Jackson v.
McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996)).

## 2. Analysis

Although Plaintiff phrases his deliberate-indifference
claims in terms of the Eighth Amendment, those claims actually
arise from the Fourteenth Amendment. *See Frost*, 152 F.3d at
1128. Because the same substantive standard applies in this

context under the Fourteenth or the Eighth Amendment, the Court
applies the Fourteenth Amendment "deliberate-indifference"
standard to both Plaintiff's Amended Complaint and Defendant's
Motion for Summary Judgment.  *See id.*

Defendants assert they are entitled to summary judgment
on Plaintiff's deliberate-indifference claims because Plaintiff
fails to demonstrate that he suffered from a serious medical need
and, in any event, there is not any evidence that Plaintiff's
treatment was medically unacceptable.  In his Response Brief
Plaintiff appears to abandon his deliberate-indifference claims
in favor of a retaliation claim under the First Amendment.[2]  *See*
*Jenkins v. Cnty. Of Riverside*, 398 F.3d 1093, 1095 (9th Cir.
2005)(noting a plaintiff abandoned claims by not defending them
in opposition to a motion for summary judgment).

The undisputed factual record indicates Linn County
Jail officials provided Plaintiff with his prescribed medical
treatment.  Although Plaintiff may have desired different medical
treatment, there is not any evidence in the record from which a
rational jury could conclude such prescribed treatment was
"'medically unacceptable under the circumstances'" or "'in
conscious disregard of an excessive risk'" to Plaintiff's health.
*See Toguchi*, 391 F.3d at 1058 (quoting *Jackson*, 90 F.3d at 332).

---

[2] Although this is a sufficient basis on which to award
summary judgment, the Court will address Plaintiff's claims on
the merits.

At best Plaintiff has shown a "difference of medical opinion as to the need to pursue one course of treatment over another," but that is insufficient to maintain a claim of deliberate indifference. *Wilhelm*, 680 F.3d at 1122.

Accordingly, the Court concludes on this record that Defendants are entitled to summary judgment on Plaintiff's deliberate-indifference claims.

### B.    Leave to Amend Complaint

As noted, in his Response Brief Plaintiff re-characterizes his deliberate-indifference claims as retaliation claims under the First Amendment.  "Although courts must construe *pro se* complaints liberally . . . , courts should not undertake to infer in one cause of action when a complaint clearly states a claim under a different cause of action." *Bogovich v. Sandoval*, 189 F.3d 999, 1001 (9th Cir. 1999)(citation omitted).  *See also O'Guinn v. Lovelock Corr. Ctr.*, 503 F.3d 1056, 1060 (9th Cir. 2007).

Plaintiff's Amended Complaint Plaintiff clearly states two deliberate-indifference claims with considerable precision. Plaintiff cites both the Eighth and Fourteenth Amendments in both claims and used variations of the phrase "deliberate indifference" four times.  Thus, although nothing in his Amended Complaint indicates Plaintiff intended to state a retaliation claim under the First Amendment, and the Court has concluded

Defendants are entitled to summary judgment on Plaintiff's deliberate-indifference claims, the Court concludes it should also consider whether Plaintiff should be permitted leave to amend again to plead specifically a First Amendment Claim. *See Akhtar*, 698 F.3d at 1212 ("A district court should not dismiss a pro se complaint without leave to amend unless it is 'absolutely clear that the deficiencies in the complaint could not be cured by amendment.'").

### 1.    Standard

The Ninth Circuit has held retaliation against a prisoner for the exercise of a constitutionally-protected right is a constitutional violation arising under the First Amendment. *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005). *See also Orebaugh v. Caspari*, 910 F.2d 526, 528 (8th Cir. 1990)("proper acts are actionable under § 1983 if done in retaliation for filing a grievance pursuant to established prison procedures").

> Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal.

*Rhodes*, 408 F.3d at 567-68 (citing *Resnick v. Hayes*, 213 F.3d 443, 449 (9th Cir. 2000)). *See also Brodheim v. Cry*, 584 F.3d

18- OPINION AND ORDER

1262, 1269 (9th Cir. 2009).

"To prevail on a retaliation claim, a plaintiff must show that his protected conduct was 'the substantial or motivating factor behind the defendant's conduct.'" *Brodheim*, 584 F.3d at 1271 (quoting *Soranno's Gasco, Inc. v. Morgan*, 874 F.2d 1310, 1314 (9th Cir. 1989)).  Thus, to survive summary judgment as to a retaliation claim, Plaintiff must "'put forth evidence of retaliatory motive, that, taken in the light most favorable to [the plaintiff], presents a genuine [dispute of material] fact as to [the defendant's] intent.'"  *Id.* (quoting *Bruce v. Ylst*, 351 F.3d 1282, 1289 (9th cir. 2003)).  *See also Bryant v. Ochoa*, 506 F. App'x 635, 636 (9th Cir. 2013).

### 2.  Analysis

"[P]risoners have a First Amendment right to file prison grievances," and "[r]etaliation against prisoners for their exercise of this right is itself a constitutional violation, and prohibited as a matter of 'clearly established law.'"  *Brodheim*, 584 F.3d at 1269.

Plaintiff asserts the "crux of Plaintiff's complaint is that Defendants retaliated against him for seeking to address his medical problems through the Linn County Jail's grievance system."  Pl.'s Resp. (#56) at 4.  As Defendants note, however, there is not any evidence of retaliation against Plaintiff for filing a grievance.

Plaintiff states in his Declaration that he "believed that Baggett imposed a kite restriction in retaliation for my efforts to utilize the grievance system and because I was persistent in seeking adequate medical care."[3]  Pruett Decl. (#57) at ¶ 41.

To the contrary, however, the record is clear that Defendants imposed the kite restriction because Plaintiff continued to file repetitive kites concerning the same issues as in his pending grievance.

In fact, when Capt. Baggett rejected Plaintiff's first grievance appeal on September 10, 2013, he warned Plaintiff that he was not allowed to submit kites concerning the same issues that were in his pending grievance and that if he continued to do so, he would be restricted in his use of the kite system.  When Plaintiff submitted another kite the next day concerning the same issues that were in his grievance, Capt. Baggett restricted Plaintiff's use of kites for three weeks.  Thus, the record indicates Defendants took action in direct response to Plaintiff repetitively filing kites while his grievance(s) concerning the

---

[3] Plaintiff also asserts Sheriff Mueller's response to his grievance appeal was untimely because Sheriff Mueller was supposed to respond within fifteen days "exclusive of weekends and holidays."  Sheriff Mueller, however, responded to Plaintiff's September 11, 2013, grievance appeal on October 2, 2013, which was the fifteenth day (exclusive of holidays and weekends) after Plaintiff submitted his appeal.  Accordingly, Sheriff Mueller's response was timely.

same issues were pending.  Filing a repetitive kite with a pending grievance is not protected conduct, and even if it was, Defendants' action in restricting Plaintiff's kite privileges would serve the reasonable correctional goal of considering prisoner grievances in a streamlined manner.

On this record the Court concludes it is "absolutely clear that the deficiencies" in Plaintiff's newly-asserted First Amendment retaliation claim "could not be cured by amendment" of Plaintiff's Complaint.  *See Akhtar*, 698 F.3d at 1212.  Thus, the Court denies Plaintiff leave to file a Second Amended Complaint and grants Defendants' Motion for Summary Judgment.

## <u>CONCLUSION</u>

For these reasons, the Court **GRANTS** Defendants' Motion (#33) for Summary Judgment, **DISMISSES** Plaintiff's Amended Complaint (#12) **with prejudice**, and **DENIES** Plaintiff leave to file a Second Amended Complaint.

IT IS SO ORDERED.

DATED this 22nd day of December, 2014.


                                   /s/ Anna J. Brown
                                   ANNA J. BROWN
                                   United States District Judge


21- OPINION AND ORDER